<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LTL MANAGEMENT, LLC, | |
| Appellant, | Civil Action No. 24-82 (MAS) |
| v. | **MEMORANDUM OPINION** |
| HOULIHAN LOKEY CAPITAL, INC., | |
| Appellee. | |

<u>**SHIPP, District Judge**</u>

    This matter comes before the Court upon Appellant LTL Management, LLC's ("LTL")[1] appeal of the United States Bankruptcy Court for the District of New Jersey's (the "Bankruptcy Court"): (1) November 14, 2023 Order (the "Fee Order") awarding fees to Appellee Houlihan Lokey Capital, Inc. ("Houlihan"); and (2) December 21, 2023 Order (the "Reconsideration Order") (collectively with the Fee Order, the "Orders") denying LTL's motion for reconsideration of the Fee Order. (ECF No. 1.) LTL filed a brief in support of its appeal (ECF No. 10), Houlihan opposed (ECF No. 18), and LTL replied (ECF No. 20). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Orders are affirmed.

**I.    BACKGROUND**

    In October 2021, LTL "inherited liability for tens of thousands of tort suits" as the result of a divisive merger that ended the existence of Johnson & Johnson Consumer Inc. ("Old JJCI")

---

[1] LTL is now known as "LLT Management." (Appellee Opp'n Br. 3, ECF No. 18.) Throughout this Memorandum Opinion, the Court will refer to both LTL and LLT Management as "LTL."

and split its assets and liabilities between LTL and a new Johnson & Johnson Consumer Inc. ("New JJCI"). (Appellant's Moving Br. 3, ECF No. 10 (citing *In re LTL Mgmt., LLC*, 64 F.4th 84, 92-93 (3d Cir. 2023)); Appellee's Opp'n Br. 3 (citing *In re LTL*, 64 F.4th at 93-94).) The tort suits that LTL inherited alleged injury from talc products manufactured by Old JJCI. (Appellant's Moving Br. 3-4; Appellee's Opp'n Br. 3 (citing *In re LTL*, 64 F.4th at 93, 95-96).) Just days after the divisive merger, LTL filed a voluntary petition under Chapter 11 of the Bankruptcy Code ("Chapter 11") in the Western District of North Carolina (the "First Bankruptcy"). (Appellee's Opp'n Br. 4; *see* Appellant's Moving Br. 3). While the First Bankruptcy was in North Carolina, an official committee of talc claimants was appointed (the "TCC"). (Appellee's Opp'n Br. 4); *see also In re LTL*, 64 F.4th at 97-98. After the First Bankruptcy was transferred to the Bankruptcy Court, the TCC moved to dismiss the First Bankruptcy for lack of good faith under Section 1112(b) of the Bankruptcy Code. (Appellee's Opp'n Br. 4); *In re LTL*, 64 F.4th at 97-98. The First Bankruptcy ultimately concluded with the Third Circuit agreeing that the First Bankruptcy should be dismissed under Section 1112(b) because LTL's bankruptcy petition was not filed in good faith. (Appellant's Moving Br. 4); *see In re LTL*, 64 F.4th at 100-11. Houlihan was retained by the TCC during the First Bankruptcy to provide expert testimony at the dismissal hearing. (Appellant's Moving Br. 5; Appellee's Opp'n Br. 5.)

On April 4, 2023, LTL again filed a voluntary petition under Chapter 11 (the "Second Bankruptcy") after another restructured relationship between LTL and New JJCI. (Appellee's Opp'n Br. 5-6; Appellant's Moving Br. 4.) On the same day the Second Bankruptcy was initiated, LTL terminated a previous 2021 funding agreement (the "2021 Funding Agreement") that had been in effect during the First Bankruptcy between Johnson & Johnson ("J&J"), New JJCI, and LTL. (Appellant's Moving Br. 4-6; Appellee's Opp'n Br. 7.) The 2021 Funding Agreement, when

in effect, had allowed LTL to seek cash from J&J and/or New JJCI to cover its newly assigned talc-related liabilities and expenses, if necessary.[2] (Appellee's Opp'n Br. 7; *see* Appellant's Moving Br. 4-6.) As soon as the Second Bankruptcy was filed, the 2021 Funding Agreement was replaced by a new funding agreement (the "2023 Funding Agreement") between Johnson & Johnson Holdco (NA) Inc. ("Holdco"), f/k/a the New JJCI, and LTL. (Appellee's Opp'n Br. 7; Bankruptcy Court's July 28, 2023 Op. A0594;[3] *see* Appellant's Moving Br. 4-6.) The 2023 Funding Agreement did not allow LTL to access funds from J&J; instead, it restricted LTL to seeking cash from Holdco. (Appellee's Opp'n Br. 7; *see* Bankruptcy Court's July 28, 2023 Op. A0591, A0594; Appellant's Moving Br. 4-6.)

After the Second Bankruptcy commenced, the Office of the United States Trustee appointed the TCC "as the sole statutory committee holding a fiduciary duty to represent the interests of all non-governmental creditors." (Appellant's Moving Br. 15; Appellee's Opp'n Br. 5.) The TCC again sought to retain Houlihan, this time as an "investment banker" tasked with undertaking "an in-depth review and analysis of," in part, LTL, Holdco, and J&J's newly restructured business forms and relationships. (Appellee's Opp'n Br. 8; *see also* Retention Agreement A0041-51.)

In retaining Houlihan, the TCC filed an application under Bankruptcy Code Section 328(a), which became effective on April 14, 2024 (the "Retention Application"). (Retention Application A0026-30, Retention Order A0417.) The Retention Application attached the retention agreement between the TCC and Houlihan (the "Retention Agreement"). (Retention Agreement A0041-51.)

---

[2] A Section 524(g) trust was also set up to "satisfy current and future talc claims." (Appellant's Moving Br. 4.)"

[3] Page numbers preceded by an "A" correspond with the Bates Stamp number in the Joint Appendix at ECF No. 10-1.

The Retention Agreement set forth the terms and conditions of Houlihan's retention, including the proposed compensation structure. (*Id.* at A0042-43.) The Retention Agreement did not provide for compensation based on standard hourly rates. (*See generally id.*) Instead, Houlihan's compensation arrangement was characterized in the Retention Application as follows:

> Houlihan . . . will seek compensation in this case subject to the Court's approval and in accordance with Bankruptcy Code Section 328(a), to include: (i) a monthly fee of $400,000 for each of the first four months; (ii) a monthly fee of $175,000 for each month thereafter; (iii) a $3,000,000 deferred fee earned and payable upon the consummation of a Chapter 11 plan of reorganization, and; (iv) a discretionary fee based upon the [TCC's] business judgement.

(Retention Application A0028.)[4] The discretionary fee called for under the Retention Agreement (the "Discretionary Fee") provided that "[i]n addition to the other fees provided for herein, at any time [a Discretionary Fee could be awarded to Houlihan by TCC]" if the TCC deemed it appropriate in its "business judgment." (Retention Agreement A0043.) The Retention Agreement further stipulated, however, that this Discretionary Fee could only be granted if Houlihan and the TCC agreed "in good faith[,] and subject to approval by the Bankruptcy Court[,]" that the

---

[4] The Order granting the Retention Application (the "Retention Order") provided that:

> Notwithstanding anything to the contrary herein, the Court and U.S. Trustee retain all rights to review and object to Houlihan['s] . . . monthly, interim, and final fee applications (including expense reimbursement and any request for counsel fees) based on the reasonableness standard in [11 U.S.C. § 330] of the Bankruptcy Code, not [11 U.S.C. § 328(a)] of the Bankruptcy Code. Notwithstanding anything contained herein or in [the Retention] Agreement to the contrary, the Court retains its rights to *sua sponte* review and raise objections to Houlihan['s] . . . request for payment of the Deferred Fee (as defined in the [Retention] Agreement) and, as may be applicable, the Discretionary Fee (as defined in the [Retention] Agreement).

(Retention Order A0420.)

Discretionary Fee was appropriate. (*Id.*) As such, the Retention Agreement made clear that before the Discretionary Fee could be paid, "[t]he [TCC] shall file a motion seeking Court approval of the Discretionary Fee, which may be objected to by any party in interest including, but not limited to, the Court, [the United States] Trustee, and [the] Fee Examiner." (*Id.*) Finally, the Retention Agreement provided that "[i]n the event that [the] Discretionary Fee is paid, 50% of the [m]onthly [f]ees received by Houlihan . . . and approved by the final order of the Bankruptcy Court shall be credited against the Discretionary Fee (as defined above) to which Houlihan . . . becomes entitled hereunder." (*Id.*)

On June 26, 2023, the Bankruptcy Court entered an Order approving the Retention Application under Section 328(a) of the Bankruptcy Code. (Retention Order A0417-25.) By approving the Retention Application, the Bankruptcy Court approved the Retention Agreement and its terms. (*Id.* at A0419-20.)

The Second Bankruptcy then proceeded to a four-day trial on motions to dismiss filed by the TCC and others. (Appellee's Opp'n Br. 9; Appellant's Moving Br. 4-5.) Houlihan provided testimony and analysis at the trial. (Appellee's Opp'n Br. 9-10.) The Bankruptcy Court ultimately sided with the TCC, credited, in part, Houlihan's analysis as credible, and dismissed the Second Bankruptcy. (Appellee's Opp'n Br. 10; Appellant's Moving Br. 5; Dismissal Op. A0607, A0609.)

On September 8, 2023, after the Bankruptcy Court made its decision dismissing the Second Bankruptcy, Houlihan filed a final fee application (the "Fee Application") and, as allowed for under the Retention Agreement, requested a discretionary fee of $2 million. (Fee Application A0624.) This amount was negotiated and agreed to between the TCC and Houlihan for "the extraordinary services provided to the [TCC] by Houlihan." (*Id.*) LTL was not involved in the negotiations. (Appellant's Moving Br. 7.)

Houlihan, in its Fee Application, sought a total amount of $3,366,496.04. (Fee Application A0624.) This total reflected $1,363,709.68 in monthly fees, $2,786.36 in expenses, and a requested $2,000,000 for the Discretionary Fee. (Appellant's Moving Br. 8; Fee Application A0624.) Houlihan represented in the Fee Application that it agreed to this compensation amount with the TCC because the TCC:

> took note that in order to proceed quickly and not cause disruption to the [TCC's] operations, [Houlihan] agreed to monthly fee concessions in the aggregate of greater than $850,000.00 in the [First and Second Bankruptcy]. The [TCC] also took note of the extraordinary efforts, particularly by senior Houlihan . . . officers during both cases.

(Fee Application A0633.) Houlihan specifically noted that the TCC valued its efforts in:

> providing litigation support (including the review of thousands of pages of discovery and deposition preparation and review), producing expert reports, and providing expert testimony, all under extremely compressed time frames. Houlihan . . . was also active in mediation efforts and the financial structuring of numerous (albeit unsuccessful) settlement efforts.

(*Id.*) Neither the United States Trustee nor any individual creditor objected to the compensation sought by Houlihan. (Appellee's Opp'n Br. 19.) The only objector was LTL, who objected to the entire $2,000,000 discretionary fee Houlihan requested. (*See* Fee Objection A0676, A0679.)

On October 18, 2023, the Bankruptcy Court held a hearing (the "Fee Hearing") during which the Discretionary Fee was considered, among other things. (Fee Hearing A1005-71.) Houlihan representatives provided testimony at the Fee Hearing that the Retention Agreement

included the Discretionary Fee because the monthly fees under the Retention Agreement were "not nearly enough to compensate [it] for the effort" it made in the Second Bankruptcy. (*Id.* at A1025.)[5]

During the Fee Hearing, the Bankruptcy Court engaged in discussion regarding Houlihan's hourly fees relative to other professionals in the case in an effort to understand whether its fee request was appropriate. (*See id.* at A1022-23 (evidencing the Bankruptcy Court's attempt to rationalize and understand how Houlihan determined its requested fee and questioning whether the requested fees may be as much as $1 million too high).) At the end of the Fee Hearing, the Bankruptcy Court invited the TCC to submit revised fee proposals for consideration because the Bankruptcy Court had "express concerns" and hoped that Houlihan, for example, would suggest "voluntary reductions that account for and address the [Bankruptcy] Court's concerns." (*Id.* at A1068-69.) The TCC did so, in part voluntarily reducing the requested Discretionary Fee to Houlihan by $200,000. (Oct. 27, 2023 TCC Correspondence A1073-75.)[6]

On November 7, 2023, the Bankruptcy Court approved a Discretionary Fee to be paid to Houlihan in the amount of $1.75 million, $50,000 less than the voluntary reduction that Houlihan and the TCC offered to make. (Letter Fee Op. A1091.) The Bankruptcy Court reduced the Discretionary Fee $250,000 from the original $2 million requested "to account for the shortened

---

[5] At the Fee Hearing, testimony was elicited that Houlihan initially sought "$2.3 million" from the TCC which consisted of "50 percent of [its] disclosed deferred fee" which was, under the Retention Agreement, $3 million "plus the amount of money that [Houlihan] had given in fee concessions between the two cases, roughly $850,000." (Fee Hearing A1019.)

[6] A November 6, 2023 correspondence to the Bankruptcy Court noted that: "[t]he $2.0 million Discretionary Fee as approved by the TCC is net of any credits due on such amount, and the $1.8 million Discretionary Fee request, reflecting a voluntary reduction by Houlihan, is also a net amount." (Nov. 6, 2023 TCC Correspondence A1085.)

duration of the [Second Bankruptcy] and the absence of a need by [Houlihan] to support the TCC with respect to the plan process." (*Id.*)[7]

Two weeks later, LTL filed a motion for reconsideration maintaining that the Bankruptcy Court made a "clear mathematical error" that warranted rectification. (Appellant's Reconsideration Mot. A1100.) Specifically, LTL contended that the Bankruptcy Court in granting Houlihan fees "failed to reduce the award by 50% of the monthly fees, as required by terms of Houlihan's engagement, which should have led" to a $681,854.84 reduction by the Bankruptcy Court, not just a $250,000 reduction. (*Id.* A1100-01.) After further written submissions and oral argument on the reconsideration motion, the Bankruptcy Court disagreed with LTL that it made a mathematical error and concluded that it instead agreed with Houlihan that it "viewed the negotiated resolution [between TCC and Houlihan] . . . to be a total sum to be paid, taking into account all of the subparts" of that resolution, including the 50% in credits that LTL contended the Bankruptcy Court neglected to apply. (*See* Reconsideration Decision A1310.) The Bankruptcy Court further elaborated that its "questioning [during the Fee Hearing and] . . . comparison to hourly rates and . . . expectations" reflected the Bankruptcy Court's understanding that the 50% credit reduction was already applied to the final number Houlihan sought to receive. (*See id.*) The Bankruptcy Court concluded:

> [I]n fairness [the Bankruptcy Court] did not see the initial proposal of a $2 million discretionary fee to be proper reflecting the risks and the status of the case. So, [the Bankruptcy Court] urged further compromise and it was brought out at [$]1.8 [million] and even against that [the Bankruptcy Court] thought there should be a further reduction down to [$1.75 million]. That is the amount that the [Bankruptcy Court] expected to be paid on top of the [monthly] fees. At no point did the Court consider that there would be credits

---

[7] On November 14, 2023, the Bankruptcy Court issued an Order Awarding Fees to Houlihan. (Nov. 14, 2023 Order A1093.) In that Order, the Bankruptcy Court referred to the Discretionary Fee as a "net discretionary fee." (*Id.* at A1095.)

> applied because the Court viewed the whole process as a give and take, a restructuring of the initial agreement into something that was more palatable. The Court is not going to reconsider its award, stands by its earlier decision, understands the debtor's frustration but also understands that there were meaningful compromises made and even calculating a discounted discretionary fee and to go back into how that was calculated specifically serves no purpose since the award contemplated by the Court was to be the amount so received in total.

(*Id.*)

LTL appeals the Discretionary Fee awarded to Houlihan by the Bankruptcy Court to this Court. (*See generally* Appellant's Moving Br.) The Court considers LTL's appeal below.

## II.    LEGAL STANDARD

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees. *See* 28 U.S.C. § 158(a) ("The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title"). The standard of review for bankruptcy court decisions "is determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005). Findings of fact are reviewed under a "clearly erroneous" standard, where factual findings may only be overturned "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cellnet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (internal quotation marks and citation omitted). Legal conclusions, on the other hand, are subject to *de novo* review by the district court. *See Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997). If it is alleged that the bankruptcy court abused its discretionary authority, the district court may only inquire whether the bankruptcy court's decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law

to fact." *Int'l Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987). A district court evaluates mixed questions of law and fact "under a mixed standard, affording a clearly erroneous standard to integral facts, but exercising plenary review of the lower court's interpretation and application of those facts to legal precepts." *In re Cellnet Data Sys., Inc.*, 327 F.3d at 244.

## III.   DISCUSSION

LTL's appeal arises from its contention that the Bankruptcy Court "erroneously awarded Houlihan an excessive Discretionary Fee." (Appellant's Moving Br. 12.) In making this point, LTL offers four contentions on appeal: (1) the Bankruptcy Court erred by awarding the Discretionary Fee where there was no proper justification for a "bonus" and/or the Discretionary Fee was unreasonable; (2) even if the Bankruptcy Court could have awarded the Discretionary Fee, the Bankruptcy Court erred in doing so because the Bankruptcy Court allowed the Discretionary Fee to be based on the TCC's business judgment; (3) the Bankruptcy Court erred when it substituted its own judgment for the express terms of the Retention Agreement and the Retention Order authorizing it; and (4) the Bankruptcy Court abused its discretion when it denied amendment or reconsideration of the Fee Order. (*Id.* at 15-36.) The Court addresses each contention in turn.

### A.    The Discretionary Fee as a "Bonus" or Unreasonable Fee

LTL first maintains that Houlihan did not establish it was entitled to a bonus under the lodestar method, "bonus standard," or the Section 330 "reasonableness" standard. (Appellant's Moving Br. 15-26.) Thus, the Bankruptcy Court's allowance of the Discretionary Fee, which was functionally a bonus or fee enhancement, was in error. (*Id.*) Importantly, this first contention appears to break down into two core arguments: (1) the Discretionary Fee was a "bonus" that required the application of certain bonus-related standards; and (2), if not, the Section 330

10

reasonableness standard applies to the Discretionary Fee, which Houlihan failed to meet in seeking the Discretionary Bonus. (*See* Appellant's Moving Br. 18-26.)

        *1.     LTL's "Bonus" Characterization*

LTL's first core argument hinges on this Court crediting LTL's assertion that the Discretionary Fee was a "bonus" or impermissible fee enhancement. (*Id.* at 18 (positing that "[a]t its heart, the Discretionary Fee is nothing more than a bonus on top of the fees awarded for the same services").) In response to LTL's first contention, Houlihan maintains that the Discretionary Fee was an "agreed to . . . fee arrangement" disconnected from contingencies and Houlihan's "success." (Appellee's Opp'n Br. 41.)

LTL fails to show why the Bankruptcy Court erred in not viewing the Discretionary Fee as a bonus. First, LTL points to no case law or facts that compel this Court to find that, as a matter of law, fact, or discretion, the Discretionary Fee must be considered a "bonus" as presented in the Retention Agreement. (*See generally* Appellant's Moving Br. (providing case law and discussion that takes for granted that the Discretionary Fee *is* a bonus or fee enhancement without providing any authority, other than its own belief, as to why such conclusion is necessary).) Without any specified authority compelling this Court to come to a different conclusion than the Bankruptcy Court did as to whether the Discretionary Fee was a "bonus," this Court can find no reason to fault the Bankruptcy Court for treating the Discretionary Fee as part of a bundle of agreed-to fees in the Retention Agreement as opposed to a separate bonus. (Appellee's Opp'n Br. 41.)

Second, and directly supporting the Bankruptcy Court's decision to not treat the Discretionary Fee as a bonus absent any authority requiring it to, the express terms of the Retention Order *itself* provided that the Discretionary Fee was not a bonus. (Retention Order A0423 ("None of the fees payable to Houlihan . . . shall constitute a 'bonus' or fee enhancement under applicable

law, except where authorized by this Order."); *see generally* Appellant's Moving Br.; Appellant's Reply Br., ECF No. 20.) As such, this Court rejects LTL's characterization of the Discretionary Fee as a bonus because: (1) LTL can cite no authority to support the assertion that by failing to consider the Discretionary Fee a bonus under the Retention Order, the Bankruptcy Court committed a legal error or an abuse of discretion; and (2) the Retention Order expressly states that the Discretionary Fee is not a bonus.

2.    *The Discretionary Fee Under the Section 330 Reasonableness Standard*

LTL contends in the alternative that "[e]ven if the Bankruptcy Court was not compelled to review the [Discretionary Fee] under the law governing professional bonuses," the Discretionary Fee was unreasonable under Section 330. (Appellant's Moving Br. 21.) When considering whether a bankruptcy court made an appropriate fee determination, this Court reviews the bankruptcy court's decision for "an abuse of discretion." *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 257 (3d Cir. 1995) (citation omitted); *see also In re 388 Route 22 Readington Holdings, LLC*, No. 21-1244, 2023 WL 4418718, at *8 (D.N.J. July 10, 2023) (finding that where an appellant does not dispute that the appropriate legal standard is applied, but rather contends that the judge erred in the application of that standard to the facts, the district court reviews the bankruptcy court's decision for abuse of discretion (citing *Zolfo*, 50 F.3d at 258)). An "abuse of discretion . . . can occur 'if the [bankruptcy] judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous.'" *Zolfo*, 50 F.3d at 257 (citation omitted).

The Bankruptcy Court did not abuse its discretion in finding that the Discretionary Fee was reasonable. To begin, the Retention Order made clear that: (1) Section 330 guided the Bankruptcy Court's review of the Discretionary Fee; and (2) the Bankruptcy Court had broad discretion to

review the Discretionary Fee for reasonableness. (*See* Retention Order A0417, A0420.) Specifically, the Retention Order read:

> Notwithstanding anything to the contrary [in the Retention Order], the [Bankruptcy Court] retain[s] all rights to review and object to Houlihan['s] . . . monthly, interim, and final fee applications (including expense reimbursement and any request for counsel fees) *based on the reasonableness standard in [S]ection 330 of the Bankruptcy Code, not [S]ection 328(a) of the Bankruptcy Code.*

(*Id.* at A0420 (emphasis added).)

Under Section 328(a), which the Retention Order was entered pursuant to, the Bankruptcy Court "may approve the employment of a professional on any terms and conditions that the [Bankruptcy] Court finds necessary to satisfy the requirement of reasonableness." *In re Fed. Mogul-Glob., Inc.*, 348 F.3d 390, 397 (3d Cir. 2003) (citing 11 U.S.C. § 328(a)). As reiterated above, pursuant to the Retention Order, the Bankruptcy Court utilized the reasonableness standard in Section 330, and not Section 328(a). (Retention Order A0420.) Section 330 reasonableness requires the bankruptcy court to determine the amount of reasonable compensation by considering such factors as: (1) the time spent on services; (2) the rate charged by the professional seeking fees; and (3) whether the services were necessary or beneficial at the time of the service. *In re 388*, 2023 WL 4418718, at *8.

Under this standard, LTL appears to primarily contend that the Bankruptcy Court inappropriately concluded that the Discretionary Fee awarded was reasonable because it did not strictly follow the lodestar analysis. (*See* Appellant's Moving Br. 21-22 (contending that the lodestar awarded to a professional is presumptively reasonable, and therefore, anything more than the lodestar is unreasonable unless "near miraculous results" are achieved).)[8] In seeking to

---

[8] LTL provides that Houlihan's lodestar amount, in full, was $1,363,709.68. (Appellant's Moving Br. 16.)

establish the lodestar calculation as the litmus of reasonableness under Section 330, LTL relies exclusively on one out-of-circuit case that itself does not make the proclamation that lodestar is the sole reasonableness guide under Section 330. (Appellant's Moving Br. 23 (citing *In re Nw. Airlines Corp.*, 400 B.R. 393 (Bankr. S.D.N.Y. 2009)).) Moreover, Appellant's out-of-circuit case law refers to "lodestar" only in the context of considering fee enhancements. *In re N.W. Airlines Corp.*, 400 B.R. at 398. This Court, however, already held LTL failed to establish that the Discretionary Fee is a fee enhancement. *See supra* Part III(A)(1). Therefore, LTL fails to establish that the Bankruptcy Court's decision to avoid a strict application of a lodestar analysis when considering a non-bonus Section 330 award is a reversible error.

Turning away from LTL's lodestar contentions, the express language of Section 330 elicits a more fluid reasonableness assessment. As set forth above, Section 330 reasonableness requires the bankruptcy court to determine the amount of reasonable compensation by considering such factors as: (1) the time spent on services; (2) the rate charged by the professional seeking fees; and (3) whether the services were necessary or beneficial at the time of the service. *In re 388*, 2023 WL 4418718, at *8.[9] In considering the Bankruptcy Court's reasonableness assessment, LTL takes issue with: (1) the fact that Houlihan received a $1.75 million Discretionary Fee despite performing the same work it performed in the First Bankruptcy for half as many hours; and (2) the fact that Houlihan, the party seeking fees, "did not and cannot show that it played a vital and indispensable role at any stage of the reorganization." (Appellant's Moving Br. 24-26.)

---

[9] Importantly, this test incorporates the core concept of lodestar without restricting it to the lodestar analysis employed when a court considers attorneys' fees or bonuses. *Id.* (requiring the bankruptcy court *to take under consideration* the time a professional spends on services and the rate charged); *Gelis v. BMW of N.A., LLC*, 49 F.4th 371, 374 (3d Cir. 2022) (defining "lodestar" as "essentially a multiplication of the hours counsel reasonably bill on a case by a reasonable hourly rate").

Contrary to LTL's protestations, however, the record reflects that the Bankruptcy Court, with the appropriate Section 330 standard in mind, did not make any clearly erroneous factual findings, misapply the legal standard, or otherwise abuse its discretion. Instead, it confronted Houlihan with many of the doubts that LTL now articulates the Bankruptcy Court failed to appropriately consider. (*See, e.g.*, Fee Hearing A1022-24 (evidencing that the Bankruptcy Court attempted to ascertain the reasonable rate for Houlihan's services as somewhere between $907/hr and $1,354/hr while noting the 2,486 hours Houlihan spent working on the Second Bankruptcy, and allowing Houlihan to extrapolate on the quality of its services in the Second Bankruptcy); *id.* at A1023 (challenging Houlihan on why it requested such a high Discretionary Fee where, in the First Bankruptcy, it spent "[n]early double the amount of hours that were spent in [the Second Bankruptcy]"); *id.* at A1023-24 ("This is a case that lasted from April through August on a motion to dismiss. There wasn't the concentrated mediation efforts. There [weren't] other aspects. [In the First Bankruptcy, Houlihan's] $2 million discretionary request was to account for an entire case.").) Significantly, these doubts clearly resonated to some extent with the Bankruptcy Court where the Bankruptcy Court asked Houlihan to voluntarily lower its Discretionary Fee based on the support it was offering for its request at the Fee Hearing. (Fee Hearing A1068-69.) In fact, the Bankruptcy Court ultimately lowered the Discretionary Fee from $2 million to $1.75 million "to account for the shortened duration of the [Second Bankruptcy]." (Letter Fee Op. A1091.) With these facts and findings in mind, it is impossible for this Court to conclude anything other than LTL simply takes issue with *how* the Bankruptcy Court exercised its discretion, i.e., landing on a higher fee figure than LTL thought appropriate. LTL's general disagreement with the Bankruptcy Court's final figure is not a valid basis for an abuse of discretion finding, and therefore, LTL's second core contention is rejected.

15

**B.    The Bankruptcy Court's Reliance on the TCC's Exercise of Business Judgment**

LTL next argues that the "business judgment standard is plainly inapplicable to the TCC's decision to award Houlihan a bonus from" LTL's assets, and as such, the Bankruptcy Court erred in approving a Discretionary Fee predicated on the TCC's business judgment. (Appellant's Moving Br. 27.) Houlihan contends that LTL did not object to the Retention Order, a final order deeming the "business judgment" language acceptable, and as such, LTL's collateral attack on a final order is impermissible. (Appellee's Opp'n Br. 29-30.) The Court agrees with Houlihan.

The Retention Order was, in fact, a final order. *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 225 (3d Cir. 2003) (finding that a court's approval of a professional's retention is, in itself, a final order). As such, if LTL wanted to challenge the Bankruptcy Court's decision to approve the Retention Agreement as written and approved, LTL needed to appeal or otherwise adequately preserve an appeal of the Retention Order itself. *In re Radnor Holdings Corp.*, 629 F. App'x 277, 279-80 (3d Cir. 2015) (citing *Shareholders v. Sound Radio, Inc.*, 109 F.3d 873, 879 (3d Cir. 1997)).

To this end, LTL maintains that it reserved an appeal of the "business judgment" language in the Retention Order in two ways. (Appellant's Reply Br. 10-11.) First, LTL contends that it successfully reserved a right to appeal the "business judgment" language where it made a general reservation of right "to object to any fees" when opposing the Retention Application. (Appellant's Reply Br. 10.) LTL, however, cites no authority supporting that this general reservation suffices to preserve a specific objection to the Retention Order's approval of a fee determination *method* designed to determine a fee which will later be *suggested* to the Bankruptcy Court as a reasonable fee. (*See generally id.*); *but see United States v. Sok*, 115 F.4th 251, 258 (3d Cir. 2024) (finding that in appealing a lower court's ruling, litigants are required to "preserve specific arguments for

16

appeal" (citing *United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013)). Instead, it appears that LTL stretches its general pre-Retention Order reservation "to object to any fees" much too far. Without any cited authority to suggest this general reservation of right can be stretched to encapsulate the attack on the Retention Order it now seeks to make, LTL's first contention is rejected. (*See generally* Appellant's Reply Br. (failing to identify any authority suggesting that a general reservation of right to object to fees can suffice to later challenge methods of determining fees for the court's review which were accepted in a prior final order).)

Second, LTL maintains that the Retention Application explicitly permits LTL to object to the Discretionary Fee "at the time of approval." (*Id.* at 10.) Again, LTL appears to, without any citations to relevant authority, conflate its reservation of right to object to a final fee determination with a right to attack the methods the TCC offered in the Retention Application for how it would determine a proposed Discretionary Fee for the Bankruptcy Court's review. LTL successfully reserved, and in fact is now still exercising by way of this appeal, a right to challenge the *fees* that the Bankruptcy Court awarded. If LTL intended to object to or appeal the *method of fee determination the TCC offered to employ prior to seeking approval from the Bankruptcy Court*, it needed to reserve or object to the Retention Order *itself* and the language it contained regarding

17

how the Discretionary Fee was to be determined. *See Sok*, 115 F.4th at 258. It failed to do so.[10]

Accordingly, LTL's second contention on appeal is rejected.

###     C.      The Bankruptcy Court's Interpretation of the Agreement's Terms

LTL's third contention appears to be its central disagreement with the Bankruptcy Court. LTL contends that the Bankruptcy Court misunderstood the Retention Agreement and inappropriately calculated the final sum to be paid to Houlihan thereunder. (Appellant's Moving Br. 28.) To make its point, LTL directs the Court's attention to Section 328(a), under which the Retention Agreement was made.

The Third Circuit has read Section 328(a) to mean that a committee may employ a professional, "with the [Bankruptcy Court's] approval," "on any reasonable terms and conditions of employment." *In re Fed. Mogul-Glob., Inc.*, 348 F.3d 390, 398 (3d Cir. 2003) (citing 11 U.S.C. § 328(a)). Stated succinctly, the Bankruptcy Court "may approve the employment of a professional on any terms and conditions that the [Bankruptcy] Court finds necessary to satisfy the requirement of reasonableness." *Id.* These terms and conditions can include compensation "different from the compensation provided under such terms and conditions after the conclusion of such employment,

---

[10] LTL attempts to cast Houlihan as the party impermissibly raising arguments on appeal. (Appellant's Reply Br. 9.) Specifically, LTL contends that because Houlihan did not contend that LTL's objections to the Retention Order were impermissible to the Bankruptcy Court, it can not now so contend. (*Id.*) First, LTL relies exclusively on Third Circuit case law, commonsensically, applying the general rule that you cannot raise new arguments on appeal *against appellants* who initiate the appeal, not against appellees like Houlihan. *See In re Imerys Talc Am., Inc.*, 38 F.4th 361, 369 (3d Cir. 2022); *In re Ins. Brokerage Antirust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009); *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 834-35 (3d Cir. 2011). Second, even if the rule LTL cites applied with equal force to appellees opposing an appeal, the rule is one of pure discretion for appellate courts to exercise. *Barefoot*, 632 F.3d at 834 ("While waiver ordinarily bars raising new arguments for the first time on appeal, this rule 'is one of discretion rather than jurisdiction'") (quoting *Selected Risks Ins. v. Bruno*, 718 F.2d 67, 69 (3d Cir. 1983)). The Court sees no reason why it would not allow Houlihan to point out that LTL itself waived its right to appeal where it failed to properly object with specificity to a final order and now seeks to collaterally attack the final order on an appeal to this Court.

if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).

LTL contends that the TCC, Houlihan, and ultimately the Bankruptcy Court strayed from the language of the Retention Agreement without any showing that the original terms and conditions proved to be "improvident in light of developments not capable of being anticipated at the time of" their fixing. (Appellant's Moving Br. 28-29.) Specifically, LTL contends that the ultimate $1.75 million awarded to Houlihan was inaccurately awarded because under the Retention Agreement "[i]n the event that [the] Discretionary Fee is paid, 50% of the [m]onthly [f]ees received by Houlihan . . . and approved by the final order of the Bankruptcy Court shall be credited against the Discretionary Fee." (Retention Agreement A0043.) By this logic, LTL maintains, 50% of the monthly fees received by Houlihan, i.e., $681,854.84, should have been taken from the final $1.75 million awarded for a granted Discretionary Fee. (*See* Appellant's Moving Br. 31-32.) LTL's third contention therefore rests solely on its proclamation that the Bankruptcy Court did not take into account the 50% credit reduction called for under the Retention Agreement, thereby ignoring the express terms of the Retention Agreement and Order.

The record suggests otherwise. The Bankruptcy Court was clear that in landing at its final $1.75 million award, it "viewed the negotiated resolution [between TCC and Houlihan] . . . to be a total sum to be paid, taking into account all of the subparts" of that resolution, *including* the 50% in credits that LTL contended the Bankruptcy Court neglected to apply. (Reconsideration Decision A1310.) As such, at most, LTL contends that the Bankruptcy Court erred by not detailing *how* it came to this final $1.75 million award such that it is unclear whether the Bankruptcy Court replaced the previously approved terms under Section 328 with its own judgment. Importantly, "adequate reasoning for a fee award need not be accompanied by a precise computational

breakdown." *In re 388 Route 22 Readington Holdings LLC*, No. 22-1143, 2023 WL 4249266, at *3 (3d Cir. June 29, 2023). Here, the Bankruptcy Court offered adequate reasoning for its final fee award in articulating that:

> [I]n fairness [the Bankruptcy Court] did not see the initial proposal of a $2 million discretionary fee to be proper reflecting the risks and the status of the case. So, [the Bankruptcy Court] urged further compromise and it was brought out at [$]1.8 [million] and even against that [the Bankruptcy Court] thought there should be a further reduction down to [$1.75 million]. That is the amount that the [Bankruptcy Court] expected to be paid on top of the [monthly] fees. At no point did the Court consider that there would be credits applied because the Court viewed the whole process as a give and take, a restructuring of the initial agreement into something that was more palatable. The Court is not going to reconsider its award, stands by its earlier decision, understands the debtor's frustration but also understands that there were meaningful compromises made and even calculating a discounted discretionary fee and to go back into how that was calculated specifically serves no purpose since the award contemplated by the Court was to be the amount so received in total.

(Reconsideration Decision A1310.) The language that LTL identifies as exhibiting an abuse of discretion, i.e. "[a]t no point did the [Bankruptcy] Court consider that there would be credits applied because the Court viewed the whole process as a give and take," is directly contextualized in the sentence preceding the above-captioned text where the Bankruptcy Court maintained it "viewed the negotiated resolution, the compromise to be a total sum to be paid, taking into account all of the subparts." (*Id.*) The Bankruptcy Court even expressly identified that it saw no utility in parsing out the details of the final computation because it would be an exercise in futility where, whatever the breakdown of the specific subparts of Houlihan's fee award, $1.75 million was the Discretionary Fee to *be paid* to Houlihan. (*See id.*)

For the reasons outlined above, LTL fails to demonstrate that the Bankruptcy Court failed to take into account the 50% credit reduction, thus establishing a clearly erroneous factual finding and/or subsequent abuse of discretion. LTL's third contention is therefore rejected.

D.    **The Bankruptcy Court's Denial of Reconsideration or Amendment**[11]

Fourth, and finally, LTL contends that the Bankruptcy Court erred in denying its motion for reconsideration or amendment. (Appellant's Moving Br. 34.) This argument is predicated on the success of the arguments above because LTL contends that "the Bankruptcy Court abused its discretion" when it denied LTL's motion for reconsideration "of the order that improperly applied the terms of the . . . Retention [Agreement] thereby miscalculating the amount of the Discretionary Fee." (*Id.*) As this Court has already found that LTL failed to show a calculation error, i.e., that the Bankruptcy Court failed to consider the 50% credit reduction, LTL's final contention on appeal necessary fails.

IV.    **CONCLUSION**

For the reasons discussed above, LTL's appeal is denied and the Bankruptcy Court's Order is affirmed. The Court will issue an accompanying Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[11] A district court reviews the bankruptcy court's denial of reconsideration under an "abuse of discretion" standard. *Long v. Atl. City Police Dep't*, 670 F.3d 436, 446-47 (3d Cir. 2012).